Argued July 22, affirmed August 17, 1977

HEALTH DIVISION, *Respondent,*

*v.*

AVION WATER COMPANY, *Petitioner.*

(CA 7952)

567 P2d 1052

Vernon W. Robinson, Bend, argued the cause and filed the brief for petitioner.

Al J. Laue, Assistant Attorney General, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

Petitioner, Avion Water Company, is a public utility water system supplying water to Romaine Village, a mobile home subdivision south of Bend, Oregon. The State Board of Health approved in 1970 Avion's plans for the construction of three wells to supply the subdivision. The wells were drilled at sites No. 1, 2 and 3 and one of the wells at site No. 3 was placed in service in 1972. At that time there was approximately 100 homes receiving water service. By the summer of 1975 Romaine Village had 200 homes and Avion began planning to place another well in operation at site No. 2. Avion's president testified that the company's plan was to have the second well in service by May 1976 which because of irrigation is the beginning of the peak demand season.

The activation effort was aborted in the fall of 1975 because the well driller's tools were inadvertently dropped in the well rendering it unusable for potable water. A second well was drilled at site No. 2 and placed in operation May 14, 1976, although Avion had not submitted its final plans to respondent for approval. ORS 448.225 requires that before a well may be placed in operation, final plans must be submitted and approved by respondent.[1] On May 18, 1976, the president of Avion sent a letter to respondent Health Division which said: "At this time I must declare that the time required for compliance under ORS 448.205 to 448.325 causes or is likely to cause an inadequate supply of water and depending on the weather we may need to place this well in service." On July 8, 1976, respondent was served with notice of assessment of a civil penalty for failure to submit final plans as required by ORS 448.225(5). After hearing before a

---

[1] ORS 448.225(5) provides:

"Before operating a community or public water system for which tentative plans have been approved, final plans shall be submitted and approved by the division, either as originally submitted or as modified to meet requirements in effect at the time of tentative approval pursuant to this section."

hearings examiner the administrator entered an order assessing a civil penalty of $500 under ORS 448.280. Avion appeals.

The parties' arguments are like ships passing in the night. Avion's principal contentions are that it was excused from compliance with ORS 448.225(5) through the operation of ORS 448.222 which provides:

> "(1) Notwithstanding the provisions of or any rules adopted pursuant to ORS 448.205 to 448.325, during an emergency and for a reasonable time thereafter, the administrator or his authorized representative shall provide for exemptions when:
>
> "(a) The person or governmental unit operating a community, public, public utility or municipal water supply system declares that the time required for compliance under ORS 448.220 causes or is likely to cause a system to supply water that is not adequate or that is a public health hazard.
>
> "(b) The administrator or his authorized representative determines that the time required for compliance under ORS 448.220 causes or is likely to cause a system to supply water that is not adequate or that is a public health hazard.
>
> "(2) Within 30 days after remedy of an emergency, the person or governmental unit operating a community, public, public utility or municipal water supply system pursuant to subsection (1) of this section shall comply with all rules of the division adopted pursuant to subsection (2) of ORS 448.220."

Respondent ignores Avion's first argument that the company's unilateral declaration of emergency under paragraph (a) above is all that is required to satisfy the requirements of ORS 448.222. In any event the argument is untenable. Subsection (1) of the statute makes it clear that the statute does not become operative except "during an emergency." An emergency is defined by ORS 448.205(8) which provides:

> " 'Emergency' means the result of any natural element or mechanical failure which is unpredictable and temporary or infrequent, and which causes a domestic

water supply source or distribution system to be temporarily less than adequate."

In his findings and conclusions the administrator reasoned that the inadequate water supply was not caused by any mechanical failure, i.e., dropping of tools, but rather the increase in the number of water users since 1972. His reasoning begs the question of whether there was an enhanced water shortage caused by the alleged mechanical failure.

■ We conclude, however, that the administrator's determination that there was no emergency is correct. The statutory definition of emergency requires not only that the condition be caused by an unpredicted mechanical failure or natural element, but also that the condition must be "temporary." It is not necessary that we specifically define the word temporary. The alleged mechanical failure rendered the well permanently inoperable. According to Avion's own testimony it took six to eight months to construct a replacement. Suffice it to say these facts do not indicate a condition of a temporary nature as contemplated by the statute.

■ Avion also makes assignments of error concerning the hearings officer's proposed findings and conclusions which are not material. We only review the administrator's final order. By the same reasoning Avion's contention that certain evidence should not have been admitted is without substance because the administrator expressly states in his order that the evidence was not considered.

Affirmed.